UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-311-FDW

| | |
|---|---|
| WILLIE T. KELLY, JR., | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| GEORGE T. SOLOMON, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendant Haynes' Motion for Summary Judgment, (Doc. No. 41). Also pending are Plaintiff's "Motion for a Default Judgment and Amended Request for Relief for Compensatory Declaration Injunctive Relief and/or Punitive Damages Motion of Summary of Judgment," (Doc. No. 53), Plaintiff's Motion to Appoint Counsel, (Doc. No. 54), and Defendant Haynes' Motion to Stay, (Doc. No. 57) and Amended Motion to Stay, (Doc. No. 58).

**I.     BACKGROUND**

Plaintiff filed a *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983 that passed initial review on his claims of excessive force, deliberate indifference to a serious medical need and retaliation with regards to incidents that allegedly occurred at the Lanesboro Correctional Institution. See (Doc. Nos. 15, 18).

On December 4, 2018, Defendant Haynes filed a Motion for Summary Judgment alleging that Plaintiff failed to exhaust his administrative remedies. (Doc. No. 41). The Court informed Plaintiff of the applicable legal standard and of the importance of responding the Motion, and

1

specifically warned him that the failure to file a timely and persuasive response would likely lead to the grant of relief that Defendant Haynes requested. (Doc. No. 43). Plaintiff filed a Response entitled "Motion for Denial of Summary Judgment," (Doc. No. 44), and Defendant Haynes filed a Reply, (Doc. No. 45).

On February 22, 2019, Plaintiff filed a "Motion for a Default Judgment and Amended Request for Relief for Compensatory Declaration Injunctive Relief and/or Punitive Damages Motion of Summary of Judgment," (Doc. No. 53), and on April 3, 2019, he filed a Motion for the Appointment of Counsel, (Doc. No. 54). On May 14, 2019, Defendant Haynes filed a Motion to Stay, (Doc. No. 57), that he later amended, (Doc. No. 58).

**(1)** **Amended Complaint** (Doc. No. 15)

In his Amended Complaint, Plaintiff alleged that he uses a wheelchair and cane, needed hip replacement surgery that he ultimately received, and had a wrist injury from an excessive force incident in 2013. On February 13, 2017, Herring and Beaver allowed Deese to take Plaintiff's doctor-ordered wheelchair when Plaintiff returned from visiting a bone specialist in Raleigh. Deese knew that Plaintiff's wheelchair was damaged and it was used to help another inmate who had overdosed, and would no longer roll straight. It was replaced just over a month later on March 22, 2017. This inflicted emotional pain and increased pain.

On March 8, 2017, there was a violent incident between gang members in the housing dorm. Plaintiff commented that, if officers were where they supposed to be on the floor, these incidents would not happen. Ingram overheard Plaintiff's comment. Ingram and Kenz escorted Plaintiff to segregation without a wheelchair or cane with his hands cuffed behind him while knowing his wrist had been injured in 2013. As a result, Plaintiff's hip gave out which reinjured him. Ingram took Plaintiff's cane and, when Plaintiff asked Laur to be cuffed in front, Laur hit

Plaintiff so hard he pushed Plaintiff onto the bed and Plaintiff defecated himself. "Staff" let go of Plaintiff while Plaintiff was shackled and he hit his right upper eye and caused a knot on his forehead for which he received six stitches at Anson hospital. (Doc. No. 15-1 at 5). Upon Plaintiff's return from Anson Hospital after the March 8 incident, Hately put Plaintiff in a suicide cell for five days without blood pressure medication.

Dr. Haynes never saw Plaintiff because Haynes altered his medical record. Haynes stopped Plaintiff's pain medication and Plaintiff broke out in a serious rash on his legs, and his blood pressure was high due to an incident on Anson. Plaintiff appears to allege that, after his hip replacement surgery, Nurse William reduced his pain medication without a doctor's approval.

Various Defendants including Defendant Hanyes harassed and threatened him for, *inter alia*, exercising his rights through the prison grievance system and "for testifying for prison." (Doc. No. 15-1 at 3).

Plaintiff was transferred to Marion C.I. on May 25, 2017. Beaver transferred Plaintiff when Plaintiff was supposed to have hip replacement surgery, which Beaver should have known was illegal. Marion C.I. does not uphold the ADA, and 95% of the inmates are gang members. Upon arriving at Marion C.I., he was made to send his legal grievances home. This adverse action was so bad that it would stop a reasonable person from continuing his suit. He had mainly legal papers and rushed him so he could send them home or they would be destroyed; "other items, books causal connection." (Doc. No. 15-1 at 8). Plaintiff was handcuffed behind his back for recreation and during classes. In the dorm, he was handcuffed to the table and put in a cell where he could not see the TV, and kept it dark, putting strain on his eyes. Staff allow inmates to control lights on phase 1 and 2.

Defendants Hicks and Washburn discriminated against Plaintiff on March 13, 2018, and

3

April 7, 2018, by telling him to lockdown when he had broken no rules, only to be placed in a dark cell.

Plaintiff was shipped to Central Prison for hip replacement and suffered a mental breakdown "due to smelling toxic fumes … and Plaintiff was without his property for 7 straight days. No fresh aid no radio no TV and was confused and I was giving medication that put me in a [delusional] state. Defendants gained by reading Plaintiff's confidential legal material." (Doc. No. 15-1 at 9).

Plaintiff was charged with a disciplinary infraction for standing up in his wheelchair to confront Defendant William "that I have a name…." on April 4, 2017. (Doc. No. 16 at 4). Disciplinary Hearing Officer Williams hid evidence on April 21, 2017, about an April 4, 2017, incident that would have cleared Plaintiff of wrongdoing.

Plaintiff's claims passed initial review against Defendant Haynes for deliberate indifference to a serious medical need for allegedly altering his medical records and stopping his pain medication, and for retaliation.

Plaintiff seeks declaratory judgment, injunctive relief including transfer to Maury C.I. for physical therapy, compensatory and punitive damages, court costs, attorney's fees, and any additional relief that the Court deems just, proper and equitable, and a jury trial.

**(2)** **Defendant Haynes' Motion for Summary Judgment** (Doc. No. 41)

Defendant Gregory Haynes, M.D., argues that judgment should be entered in his favor because Plaintiff failed to exhaust his available administrative remedies before bringing this action as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)1.

Defendant Haynes argues that Plaintiff exhausted five grievances, only four of which were exhausted prior to June 1, 2017 when Plaintiff filed the Complaint in this action. None of the

grievances address Plaintiff's allegations against Defendant Haynes or refer to Defendant Haynes. The exhausted grievances involve: (1) personal property taken as contraband in 2014; (2) care related to his knee and hip in 2014; (3) a request for a wheelchair in 2017; (4) excessive force; and (5) a request to be removed from segregation and to purchase stamps. In the Amended Complaint, Plaintiff alleges that Defendant Haynes was deliberately indifferent for altering his medical records and stopping his pain medications. The exhausted grievances failed to put NCDPS on fair notice that Defendant Haynes was deliberately indifferent to Plaintiff in any way.

With regards to the third exhausted grievance addressing a request for a wheelchair, Plaintiff states that "Dr. Hayes," an outside bone specialist from Union County, ordered that Plaintiff be given a wheelchair and Ultram medication for a severe hip injury. (Doc. No. 42 at 9). Counsel states that it does not appear that Plaintiff inadvertently referred to "Dr. Hayes" instead of "Dr. Haynes" and further Defendant Haynes is not a bone specialist in Union County. (Id.). Moreover, Plaintiff indicated that his grievance would be resolved by a new wheelchair and Plaintiff makes no allegation against Defendant Haynes for interfering with his access to a wheelchair.

**(3)** **Plaintiff's Response** (Doc. No. 44)

Plaintiff argues that he filed grievances addressing inadequate care and he argues that the medical records show a failure to act. He specifically refers to the grievance filed on February 13, 2017, activity restrictions, and a health services utilization review summary. The comments state "seen in CMC-Union ED on 6/22/13 due to fall" for which he was examined by Dr. Hassan and a wheelchair was ordered, as was an evaluation by Carolina Bone and Joint for left wrist pain. (Doc. No. 44 at 2). Plaintiff claims that he was told by a previous bone specialist that he needed a left hip replacement, and his property was destroyed on October 11, 2013 which violated due process.

5

(Id.). On September 20 and 25, 2013, Defendant overlooked bone specialist and Anson County Hospital orders that Plaintiff not be housed upstairs, but this was rejected by Dr. Anthony Searles. (Doc. No. 44 at 2). Plaintiff kept a paper trail because, on February 13, 2017, Plaintiff was placed in fear of bodily injury and harassment. Plaintiff "[n]ever got to see M.D. G. Haynes after giving information to bone specialist Dr. Jaffey to conduct (L) hip replacement, a major switch by M.D. G. Haynes that bone specialist at Chapel Hill Hospital was going to conduct." (Doc. No. 44 at 3). On March 8, 2017, "Plaintiff get assaulted. Never saw M.D. nor has he presented evidence medical technician found negligent by altering medical records. Failure to act." (Id.). Plaintiff argues that the chief medical officer of the prison system could be liable where he failed to correct the failures of medical tracking, which resulted in surgery on October 21, 2017 that was first approved on August 15 by Dr. Jaffe "[a]nd, delaying examination and treatment M.D. G. Haynes inadequate treatment or diagnosis." (Id.).

Plaintiff has attached to his Response a Motion for injunctive relief and temporary restraining order, (Doc. No. 44 at 4), in which he argues that he has continued to be placed in danger of bodily harm, that he is the victim of a campaign of intimidation, and that he continues to receive deliberately indifferent medical care. He asks for an immediate transfer and provision of health care including access to therapy pursuant to the bone doctor's orders.

**(4)** **Defendant Haynes' Reply** (Doc. No. 45)

Defendant Haynes asserts that none of Plaintiff's records demonstrate that he properly exhausted the available administrative remedies before filing suit on June 1, 2017 and that the Motion for Summary Judgment should be granted.

**(5)** **Evidence**[1]

---

[1] This section is not exhaustive. The bolded entries are exhausted grievances.

| | |
|---|---|
| **5/22/14** | Administrative Remedy Procedure (number illegible):[2] Plaintiff claims that he was treated unfairly when his personal property was taken as contraband (Doc. No. 11 at 7) |
| 7/2/14 | Step Three Response: staff adequately address the grievance concerns, facts found by the staff investigator are adopted; grievance is considered resolved (Doc. No. 11 at 7) |
| **9/12/14** | Administrative Remedy Procedure (4865-14-2387): Grievance Statement: "Supt R. D. Mitchell Facility Designee [illegible] of wheelchair taken 6/6/14 by Unit Mg Cole Sgt. Harris Sgt Mills (order) officers may not substitute their judgment for a medical professional prescription or under such action is deliberate indifference. I've been denied medical care inadequate treatment or intentional interfere with prescribed treatment as follow Sgt S. Tripplet, C/O Holder C/O Rushing C/O William drag me out my cell see tape 7/22/14 8:00 am 1:00 pm. Only to be deny mental health where I was lied upon by Sgt S. Tripplet when nurse asked did y'all use force they reply was no. witness inmates .... Also Program Mg. McMillan had to put C/O Rushing in check. I want statement from them. All my properly was taken out my cell [illegible] my mattress and high blood pressure pills. They tried to kill me for [illegible] hours. I was leg shackle no shoes. And never seen medical until after tort claim hearing. 7/26/15 Sal R.N. Gritten said he's waiting for doctors order for wheelchair & cain [illegible] shoes, blood pressure pills. No one e-mail medical about these gross acts. Plaintiff suffers from [illegible] impairment wrist."<br>Requested Remedy: "That I receive adequate treatment M.D. MRI on knee & hip, wheelchair & cain be given back (ASAP) investigation by SBI on more staff and be put on leave without pay or lost of rank and not be reprisal by any staff worker here and received $10,000.00 [illegible]." (Doc. No. 11 at 9) |
| 10/3/14 | Step One Unit Response (4865-14-2387): Plaintiff was seen on nursing sick call on 9/24/14 and has been referred to the camp provider for evaluation of his medical needs; no further action is required (Doc. No. 11 at 10) |
| 10/17/14 | Step Two Response (4865-14-2387): Plaintiff received treatment and care consistent with community standards; administrator added Plaintiff to the first available appointment slot to see M.D which is in early November; administrator was informed by a staff nurse that Plaintiff was observed ambulating without difficulty in his housing unit, this could be why the wheelchair was taken; no further action required. Plaintiff appealed (Doc. No. 11 at 10) |

---

[2] This information is gleaned from the Step Three Response; the May 22 grievance has not been filed with the Court.

| | |
|---|---|
| 11/12/14 | <u>Step Three Response (4865-14-2387)</u>: it appears that staff has adequately addressed Plaintiff's grievance concerns, facts found by staff investigator are adopted; the grievance is considered resolved (Doc. No. 11 at 11) |
| 8/15, 10/15 | <u>Declaration</u>: Plaintiff states that he wrote a grievance that was returned to him with no recorded number because he did not sign the second grievance form; this grievance addressed the confiscation of his property to cover up abuse, violation, and negligence; the grievance was rejected on a pretense and the signature was sufficient; this is further proof that the administration staff at Lanesboro has worked in fraud to deny him his full rights free from harassment, prejudice, discrimination, and willful negligence (Doc. No. 11 at 13) |
| **2/13/17** | Administrative Remedy Procedure (4865-2016-JPODA-00226): Grievance Statement: "Plaintiff bring forth this urgent matter into the attention of Higher Authority chiefly Head Administrator John A. Herring, concerning the unethical procedure of his subordinate staff from medical to custody. On 9/20/14, 12/1/14, I was clearly ordered, by **Dr. Hayes, an outside Bone Specialist from Union County** to be given a Wheelchair and Ultran medication for my severe hip injury, as I already have…. Recall hip implant on my right side, and await correction of left hip replacement. On 3/28/15, I was given another wheelchair from Lanesboro medical department then on 11/19/15, I was seen by Carolina Bone Specialist and was searched by C/O Bradon found a plastic door jam concealed in my wheelchair and stated that it was raggedy anyway. Regardless of these reason for taking my wheelchair he still violated N.C. Gen Statutes by denying three medical doctors and bone specialist order that I am required to have a wheelchair due to my replaced. I request to have C/O Deese recommended a document disability as of this date 2/13/17 I still have not had my wheelchair replaced I request to have my wheelchair replaced as ordered by several M.D and have C/O Deese recommended a demoted or allow me to proceed quickly for relief in federal court."<br>Requested Remedy: "To have a new wheelchair given to me as ordered by several Dr or allow me to exhaust my grievance swiftly to proceed to a federal forum, and to be assigned an orderly ASAP." (Doc. No. 1-1 at 5-6) |
| **3/11/17** | Administrative Remedy Procedure (4865-2017-NPOCD-00534): Grievance Statement: "On 3/8/17 while housed on Union A-47, two (2) staff members entered A-pod yelling Lock Down! I hung up the phone and a staff member yelled at me. And, I stated if y'all keep an officer on post, these incidents wouldn't happen! As I entered my cell A-47, both of the staff members entered behind me and one of them tried to cuff me from behind, due to the fact that I walk with a cane and use a wheelchair I loss my balance due to the other officer punched me in my temple with a closed fist. Afterwards, I was escorted to Anson Unit and placed in a holding cage, as |

8

|         | I sat in the holding cage. I tried to commit suicide because I had just received bad news from, concerning my mother. Staff came in and moved me to a holding cage on lower Richmond Unit. I tried to stand up and my I took a step in the holding cage and my hip gave out on me and I fell and bust my left eye. Staff let me lying on the floor for a long period of time, without notifying medical until the blood dried up. And I became conscious afterwards I was taken to medical checked by the nurse and given a shower because I defecated on myself during the (use of force). Later I was taken to Anson Co Hospital and received six snitches. This type of treatment is prohibited in the (DPOPS). I strongly feel as if I have been violated and deprived of my rights pursuant to N.C.G.S. 148-20, corporal punishment, and violation of the Eighth Amendment."
Requested Remedy: "I'm not trying to challenge the system, all I desire is to be placed back in regular population Union (A-47 - B-47) with my wheelchair my cane and all of my self med as well as given the opportunity to make medium custody so I can make a successfully trancstion back into society." (Doc. No. 1-1 at 8) |
|---|---|
| 4/7/17 | Step Three Response (4865-2016-JPODA-00226): re 2/13/17 grievance; staff responded that an investigation of Plaintiff's concern revealed that staff addressed his issue in the Step One Unit Response of his grievance; the examiner adopts the facts found by the staff investigator and concludes that staff adequately addressed Plaintiff's concerns; there was no violation of prison policy or evidence of staff indifference; no further action is warranted and the grievance is dismissed (Doc. No. 1-1 at 7) |
| 4/11/17 | Step Three Response (4865-2017-NPOCD-00534): Plaintiff alleges that staff used excessive force; staff investigated and concluded that Plaintiff has not been treated unfairly or outside the scope of correctional policies and procedures; there is no supporting evidence that staff violated any applicable policy; grievance is dismissed (Doc. No. 1-1 at 11) |
| 6/1/17 | Lawsuit Filed (Doc. No. 1) |
| 10/15/17 | Administrative Remedy Procedure (3730-2017-1379): re mail being opened and retaliation; asks to receive his books or that money be put back in his trust account, an investigation, and to receive a six-month printout (Doc. No. 16 at 37) |
| 11/27/17 | Administrative Remedy Procedure: addressing incidents at Marion C.I. on 11/21/17 (Doc. No. 16 at 39) |
| 11/28/17 | Administrative Remedy Procedure: marked "Emergency;" alleging that officials admitted to intentionally using race as a factor to decide whether an inmate would be kept on lockdown (Doc. No. 16 at 40) |

9

| 12/2/17 | Administrative Remedy Procedure (3730-2017-EU3A-05951): "Plaintiff happens to be Muslim African American. He's been derpive of Equal Protect of Law. Bring forth this urgent matter into the attention of Unit Mg & Asst on Seg E-U3A008 about the unethical procedure of his subordinate staff. Also Plaintiff spoke with psychiatrist Hewitt about mental illness after 10/23/17 hip replacement and Plaintiff spoke to supervisor case Mg J. Vickens about Due Process of Law, 5 14 amendment & G.S. also about his status which Phrase 2 deliberately has been shown toward Plaintiff. He's without his Dr2boots, glasses, nee braclet, unsafe showers, no newspaper. Can't hear TV or see. No shall any state deprive any person of life or property without due process of law under color of state need. Monroe 365 U.S. 167 (1961). Harassment deliberate indifferent to a serious medical need Farmer v. Kavanaugh. Plaintiff hip is swollen due to negligence of staff subordinate." Remedy Request: "To be remove from Seg (ASAP) it's been 3 wks. Plaintiff has been in single cell 24-7 without fresh air, no phone call, money taken out his account, deprive him of buy stamps. Access to court. To receive Dr2boot (12-3-17) & physical therapy for hip replacement 10-23-17 or be shipped to have this done under ADA AA for reward for punitive damages $50,000." (Doc. No. 16 at 42) |
|---|---|
| 2/6/18 | Step Three Response (3730-2017-EU3A-05951): staff has adequately addressed Plaintiff's concerns; facts found by staff investigator are adopted; resolved (Doc. No. 16 at 43) |
| 3/18/18 | Administrative Remedy Procedure (3730-2018-FU1N-1142): addressing therapy, appointment with bone specialist, and reprisals (Doc. No. 16 at 46) |
| 3/28/18 | DC-410 Screening Response (3730-2018-FU1N-04883): grievance is being rejected due to more than one incident (Doc. No. 16 at 45) |
| 3/30/18 | Administrative Remedy Procedure: requesting boot per doctor's orders, therapy, and to be shipped (Doc. No. 16 at 52) |

## II. STANDARD OF REVIEW

**(1) Summary Judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fec. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**(2) Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under

11

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion is mandatory. Id. at 524 (citation omitted); Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id. A prisoner is not entitled to exhaust administrative remedies during the pendency of an action. Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). The PLRA requires "proper" exhaustion, that is, "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. It is well settled that a grievance does not have to mention a defendant by name so long as the grievance gives the defendant fair notice of the claim. See Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008). However, regardless of whether a particular defendant is named in a grievance, if the grievance fails to give prison authorities fair notice of, and the opportunity to address, the problem that will later form the basis of the suit against that defendant, dismissal of that defendant is appropriate. See Davidson v. Davis, 2015 WL 996629 at *3 (W.D.N.C. Mar. 6, 2015) (citing Johnson v. Johnson, 385 F.3d 503, 516-17 (5th Cir. 2004)).

### III. DISCUSSION

The Amended Complaint passed initial review against Defendant Haynes for deliberate

12

indifference for altering his medical records and stopping his pain medication, and for retaliation. It appears that Plaintiff exhausted four grievances before he filed the Complaint in this case on June 1, 2017. The May 22, 2014 grievance addressed the confiscation of personal property (Doc. No. 11 at 7); the September 12, 2014 grievance addressed the confiscation of his wheelchair, correctional officers' use of force, and correctional officers' substitution of their own judgment for that of medical staff (Doc. No. 11 at 9); the February 13, 2017 grievance addressed the confiscation of a doctor-ordered wheelchair; and the March 11, 2017 grievance addressed a use of force incident and suicide attempt.

The four grievances that were exhausted before the Complaint was filed do not address the alleged alteration of Plaintiff's medical records, stoppage of his pain medication, or retaliation by Dr. Haynes. Plaintiff does not dispute Defendant Haynes' argument that the "Dr. Hayes" referred to in the February 13, 2017 grievance is not Defendant Haynes. Plaintiff's only argument appears to be that Defendant Haynes is liable for his subordinates' deliberate indifference through a theory of supervisory liability with regards to delays in examination and treatment that ultimately delayed Plaintiff's hip surgery. Plaintiff failed to fairly present any direct or supervisory claims against Defendant Haynes in his exhausted grievances before NCDPS. Although Plaintiff was not required to specifically name Defendant Haynes, he was required to put NCDPS on notice of the alleged problems on which he currently seeks to impose § 1983 liability and he failed to do so. Therefore, Defendant Haynes' Motion for Summary Judgment based on failure to exhaust administrative remedies will be granted and his claims against Defendant Haynes will be dismissed without prejudice.

**IV.  PENDING MOTIONS**

**(1)  Motion for Default Judgment** (Doc. No. 53)

13

Plaintiff seeks default judgment and an award of punitive damages against Defendant Haynes, arguing that Defendant Haynes failed to timely file an answer. He also reiterates his allegations against Defendant Haynes.

Defendant Hanyes's Waiver of the Service of Summons was executed on October 15, 2018, making his answer due on December 14, 2018. See (Doc. No. 32). He filed an Answer and the instant Motion for Summary Judgment before that deadline expired on December 4, 2018. (Doc. Nos. 40, 41). No default occurred, and Plaintiff's Motion will be denied.

**(2)** **Plaintiff's Motion for the Appointment of Counsel** (Doc. No. 54)

Plaintiff argues that counsel should be appointed because he is unable to afford counsel, the issues in the case are complex, Plaintiff has limited access to the court and no law library, and he has little legal knowledge.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Plaintiff has failed to demonstrate the existence of extraordinary circumstances. The Motion for Appointment of Counsel will therefore be denied.

**(3)** **Defendant Haynes' Motion to Stay** (Doc. Nos. 57, 58)

Defendant Haynes seeks an order staying discovery or, in the alternative, for an extension of time to respond to Plaintiff's discovery requests, (Doc. Nos. 55, 56), until the Court rules on Defendant Haynes' Motion for Summary Judgment. Defendants William, Hatley, Krantz, Beaver, Herring, Ingram, Deese, Laur, Swink, and McFaulds do not consent to an extension of the time. (Doc. No. 58).

Because Defendant Haynes' Motion for Summary Judgment has been granted, his Motion

for Stay will be denied as moot.

## V. CONCLUSION

In sum, for the reasons stated herein, Defendant Haynes' Motion for Summary Judgment, (Doc. No. 41), is granted; Plaintiff's "Motion for a Default Judgment and Amended Request for Relief for Compensatory Declaration Injunctive Relief and/or Punitive Damages Motion of Summary of Judgment," (Doc. No. 53), is denied; Plaintiff's Motion to Appoint Counsel, (Doc. No. 54), is denied; and Defendant Haynes' Motion to Stay, (Doc. Nos. 57, 58), is denied as moot.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Haynes' Motion for Summary Judgment, (Doc. No. 41), is **GRANTED**.

2. Plaintiff's "Motion for a Default Judgment and Amended Request for Relief for Compensatory Declaration Injunctive Relief and/or Punitive Damages Motion of Summary of Judgment," (Doc. No. 53), is **DENIED**.

3. Plaintiff's Motion to Appoint Counsel, (Doc. No. 54), is **DENIED**.

4. Defendant Haynes' Motion to Stay, (Doc. No. 57), and Amended Motion to Stay, (Doc. No. 58), are **DENIED** as moot.

5. The Clerk of Court is instructed to terminate this action as to Defendant Haynes.

Signed: May 23, 2019

Frank D. Whitney
Chief United States District Judge